UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JEFFTEX INTERNATIONAL, LTD.

                Plaintiff,

      -against-

AIR-CITY, INC.,

                Defendant.

-------------------------------------------------------------------X

AIR-CITY, INC.,

                Third-Party Plaintiff,

      -against-

JPI TRADING CORP.,

                Third-Party Defendant.

-------------------------------------------------------------------X

<u>**NOT FOR PUBLICATION**</u>

<u>MEMORANDUM AND ORDER</u>

03 CV 2855 (NGG)(RMM)

GARAUFIS, District Judge.

      On April 7, 2005, this court entered a Default Judgment against Third-Party Defendant JPI Trading Corp. ("JPI Trading") in favor of Plaintiff Jefftex International, Ltd. ("Jefftex") for its repeated failure to appear in court and to hire counsel in violation of court orders. Pursuant to Fed. R. Civ. P. 55 and 60, JPI Trading on April 25, 2005 moved to vacate or modify the Default Judgment, and under Fed. R. Civ. P. 13 and 15 to amend its Answer to include counterclaims. Plaintiff Jefftex also moves to modify the Default Judgment. Jefftex and Defendant and Third-Party Plaintiff Air-City, Inc. ("Air-City") cross-move for further attorney's fees and civil sanctions associated with these motions. For the reasons set forth below, JPI Trading's motions to vacate or modify the Default Judgment, and to amend its Answer are DENIED, Jefftex's motion to modify the Default Judgment is DENIED, and Jefftex's and Air-City's motions for

sanctions and for attorney's fees are DENIED.

I.      Background

A.      Jefftex's Contract Claims Against Air-City and JPI Trading

Jefftex is a foreign corporation that manufactures children's apparel based in the Republic of China (Taiwan).  (Compl. ¶ 6; Young Aff. ¶ 4).  It contracted with Air-City, a New York corporation, to ship overseas apparel manufactured by Jefftex from China, Taiwan, Cambodia, and Vietnam to the United States, for delivery to JPI Trading, a New York customer.  (Compl. ¶¶ 6-22; Young Aff. ¶¶ 11, 14).  The bills of lading for the shipments from China, Taiwan, Cambodia, and Vietnam to the United States, list "Air-City Inc." as the "Forwarding Agent" and JPI Trading as the "Consignee" and "Notify Party."  (Compl. ¶¶ 23-26; Young Aff. ¶ 12-14; Safdieh's Apr. 21, 2005 Decl. ¶ 16 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 9).
The Second Circuit has described the function of a bill of lading as follows:

> The seller tenders shipping documents, including a negotiable bill of lading, rather than goods to a buyer.  By paying for the documents, the buyer gets possession of the original bill of lading.  Possession of the bill [of lading] entitles [a party] to possession of the goods; it represents the goods and conveys title to them . . . .  Absent a valid agreement to the contrary, the carrier, the issuer of the bill of lading, is responsible for releasing the cargo only to the party who presents the original bill of lading.

Allied Chemical Int'l Corp. v. Companhia de Nevegacao Lloyd Brasileiro, 775 F.2d 476, 481 (2d Cir. 1985).  Air-City delivered the shipments to JPI Trading without receipt of the original bills of lading or payment by JPI Trading.  (Compl. ¶ 29; Young Aff. ¶ 19).

This matter commenced on June 10, 2003 with the filing of a complaint by Jefftex against Air-City, the Defendant, alleging that Air-City improperly released the apparel to JPI Trading.  In

its complaint, Jefftex alleged subject matter jurisdiction based on an admiralty claim under 28 U.S.C. § 1333, the existence of a federal question (28 U.S.C. § 1331) under the Carriage of Goods by Sea Act, 46 U.S.C. §1300 et seq. ("COGSA"), and diversity of citizenship, 28 U.S.C. § 1332. (Compl. ¶¶ 1-3.) Air-City on September 26, 2003 filed a third-party complaint against JPI Trading, alleging that JPI Trading instructed Air-City to release the goods to it, and for indemnification for claims brought by Jefftex in connection with the goods. (Air-City's Third-Party Compl. ¶¶ 6-7; Air-City Mem. Mot. Vacate, 2).

B.      Conduct of JPI Trading Resulting in Default Judgment Against It

The conduct of JPI Trading and its president, Joseph Safdieh ("Safdieh"), during the course of this litigation has been described in Magistrate Judge Robert M. Levy's Report and Recommendation ("R&R") issued on January 26, 2005, and adopted by me on April 7, 2005, and is summarized here. The parties appeared before Judge Levy for settlement conferences on April 20, 2004, April 29, 2004, May 25, 2004, June 10, 2004, June 30, 2004, July 12, 2004, and July 14, 2004. Without explanation, Safdieh arrived two hours late for the conference on May 25, 2004. At the conference on June 10, 2004, the parties reported that they had agreed to a settlement in principle, but at the following two conferences counsel for JPI Trading requested more time to finalize terms of the agreement and secure a bond. On July 14, 2004, Mr. Mancinelli, counsel for JPI Trading, informed the court that Safdieh had terminated him. Judge Levy instructed Safdieh to appear with counsel on July 23, 2004 for a conference, and advised that if Safdieh were to secure new counsel for JPI Trading, that Mr. Mancinelli had to move for leave to withdraw.

JPI Trading failed to appear in the July 23, 2004 conference. Instead, Safdieh called by

cell phone and requested more time. Judge Levy scheduled another conference for August 3, 2004 and ordered Safdieh to appear in person. This order stated that the conference would not be adjourned without an express written order, and that Mr. Mancinelli was to continue to appear on behalf of JPI Trading until an order for leave to withdraw was granted. However, on August 3, 2004, Safdieh again failed to appear.

After counsel for Jefftex informed the court on August 18, 2004 that Safdieh had not signed the stipulation of settlement or produced information pursuant to the court's most recent order, the court scheduled another conference on Jefftex's request and ordered Safdieh to appear in person. Safdieh did appear on August 18, 2004, and agreed to submit the new settlement agreement to his new attorney on October 25, 2004, and to submit an executed agreement to plaintiff by October 27, 2004. The court's order stated:

> In the event JPI's new counsel advises Mr. Safdieh not to sign the agreement, Mr. Safdieh agrees - and the court directs - that JPI shall so notify the court by the close of business on October 25. The court advised Mr. Safdieh - and Mr. Safdieh stated that he understood - that JPI cannot proceed pro se and that, if this case does not settle, and Mr. Mancinelli's motion to withdraw as counsel is granted, JPI will be in default unless new counsel files a notice of appearance forthwith.

(Oct. 21, 2004 Order.) Mr. Mancinelli was permitted to withdraw as counsel for JPI Trading on November 17, 2004. (Nov. 17, 2004 Order.) At that time, the court ordered JPI Trading to appear by new counsel no later than November 30, 2004, and warned that "[f]ailure to do so without good cause will likely result in the entry of a default judgment against JPI [Trading]." (Id.) Despite a further extension of the deadline to December 17, 2004, JPI Trading failed to comply with the orders of the court, or to retain new counsel. Judge Levy's R&R, dated January

26, 2005 recommended that sanctions be imposed and a default judgment granted. No objections were timely filed to this recommendation.

Pursuant to 28 U.S.C. § 636(e)(6), on April 1, 2005, this court heard evidence of the acts and conduct described in the R&R concerning Safdieh's and JPI Trading's disregard for court orders. Faced with the imminent prospect of default and a finding of contempt by this court, JPI Trading immediately retained counsel following the April 1 hearing and requested the opportunity to resolve the instant dispute on the merits. On April 5, 2005, I granted an Order for civil contempt and for entry of default judgment ("Apr. 5 Order") against JPI Trading in favor of Jefftex. On April 15, 2005, I entered default judgment ("Apr. 15 Order") in the amount of $1,126,957.80 plus interest against JPI Trading in favor of Jefftex. On April 25, 2005, JPI Trading moved to vacate the judgment. In its motion, JPI Trading asserts that the judgment is a nullity, because the court lacks subject matter jurisdiction, and that JPI Trading had good cause to default because its default was not due to willful and deliberate conduct, it has meritorious defenses, and there is no prejudice to the other litigants caused by vacating the judgment. JPI Trading also moves for this court to grant leave for it to amend its Answer to include counterclaims related to the contract dispute. JPI Trading and Jefftex move to modify the Default Judgment. Jefftex and Air-City cross-move for sanctions and attorneys fees associated with these motions.

II.    Discussion

A.    Motion to Vacate

1.    Standard for Review of Default Judgment

Rule 55(c) states that "if a judgment by default has been entered, [a court may] set it aside

in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c).[1]  A "strong public policy favors resolving

disputes on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001).

However, the courts also have a competing "interest in expediting litigation" and in preventing

"abuses of process . . . by enforcing those defaults that arise from egregious or deliberate

conduct." Pecarsky, 249 F.3d at 172; see also Kotlicky v. U.S. Fidelity & Guaranty Co., 817

F.2d 6, 9 (2d Cir. 1987); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857

(1973).  "Relief under Rule 60(b) . . . may be granted only in extraordinary circumstances."

United States v. Bank of New York, 14 F.3d 756, 758 (2d Cir. 1994) (quotations and citations

omitted).  Generally, courts require that the evidence in support of the motion to vacate a final

judgment be "highly convincing."  United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977); see

also Kotlicky v. United States Fidelity & Guaranty Co., 817 F.2d 6, 9 (2d Cir. 1987).

2.      "Void" Judgment

       Rule 60(b)(4) of the Federal Rules of Civil Procedure provides that relief from default

may be granted for procedural or jurisdictional irregularities in obtaining the default judgment,

because such defects render the judgment "void."  Fed. R. Civ. P. 60(b)(4).

---

[1]JPI Trading suggests that the Second Circuit's ruling in Meehan v. Snow requires this
court to review the default judgment under Rule 55(c) for entry of default rather than for Rule
60(b) review of default judgments.  652 F.2d 274 (2d Cir. 1981).  (JPI Trading's Mem. Supp.
Mot. Vacate at 4.)  I disagree.  In Meehan, the District Court granted a default judgment against
defendant for failure to answer a pleading without first requiring that the plaintiff obtain an entry
of default from the clerk of the court in accordance with Rule 55(a).  Id. at 276.  The Second
Circuit held that this error required the court to review the default under Rule 55(c) standards.
Id.  Here, default judgment was granted against JPI Trading for its failure to obey court orders
under Rule 55(b)(2), which does not require a preliminary entry of default.  Nor does JPI Trading
suggest that the instant default judgment was granted in a procedurally improper manner.
Accordingly, the "more stringent" standard of Fed. R. Civ. P. 60(b) is appropriate.  Dixonweb
Printing Co. v. Photo Intercept Coupon Systems, Inc., No. 94-CV-7436, 1995 U.S. Dist. LEXIS
8871, at *5 (S.D.N.Y. June 26, 1995).

a.    Subject Matter Jurisdiction

If a court lacks subject matter jurisdiction, any default judgment rendered against a

defendant is a nullity.  United States v. Forma, 42 F.3d 759, 762 (2d Cir. 1994).  However, this

court has subject matter jurisdiction over this matter because it arises under maritime law, raises

a federal question, and because of the diversity of the parties.

(1)    Admiralty Jurisdiction

The Constitution grants admiralty jurisdiction to federal courts.  See Art. III, § 2, cl. 1

(granting federal judicial power over "all Cases of admiralty and maritime Jurisdiction); 28

U.S.C. § 1333(1) (providing that federal judicial power extends to "all Cases of admiralty and

maritime Jurisdiction").

JPI Trading argues that this court lacks subject matter jurisdiction because the claims

involved in the instant contract dispute are not by their nature admiralty claims.  "To ascertain

whether a contract is a maritime one . . . . 'depends upon . . . the nature and character of the

contract,' and the true criterion is whether it has 'reference to maritime service or maritime

transactions.'"  Norfolk So. Railway Co. v. Kirby.  543 U.S. 14, 18-19, 125 S. Ct. 385, 160 L.

Ed. 2d 283 (2004) (quoting North Pacific S. S. Co. v. Hall Brothers Marine Railway &

Shipbuilding Co., 249 U.S. 119, 125, 39 S. Ct. 221, 63 L. Ed. 510 (1919) (citations omitted)).[2]

In an action against a carrier, the question of admiralty jurisdiction depends on whether the

"primary objective is to accomplish the transportation of goods by sea . . . ."  Id. at 19; see also

_____

        [2] The dispute in Kirby primarily involved the application of federal law, and secondarily
admiralty jurisdiction.  However, "[b]ecause the grant of admiralty jurisdiction and the power to
make admiralty law are mutually dependent, the two are often intertwined in our cases."  Kirby,
543 U.S. at 18.

<u>Folksamerica Reinsurance Company v. Clean Water of New York, Inc.</u>, 413 F.3d 307, 314 (2d Cir. 2005).

With these principles in mind, it is clear that an action against a shipper "for delivering goods in violation of the contract of carriage is properly within federal admiralty jurisdiction." <u>Leather's Best, Inc. v. S.S. Mormaclynx</u>, 451 F.2d 800, 807 (2d Cir. 1971); <u>see</u> <u>also</u> <u>Hangzhou Leather Products Industrial v. MPW Trading Corp.</u>, No. 96-CV-3590, 1997 U.S. Dist. LEXIS 15629, at *1 (E.D.N.Y. Sept. 19, 1997). In the instant action, Plaintiff Jefftex contracted with Defendant Air-City to ship goods over sea from Asia to the United States, and sued Air-City because it improperly released goods to Third-Party Defendant JPI Shipping in violation of the bills of lading, which required Air-City to accept payment from JPI Shipping prior to releasing the goods. (Compl. ¶¶ 6-29.) I find that the contract is in essence maritime, and that the claim, that Defendant Air-City released goods in violation of the bills of lading, is within federal admiralty jurisdiction.

JPI Trading claims that there is no admiralty jurisdiction because no party is on the original bills of lading. (JPI Trading's Mem. Supp. Mot. Vacate at 6-7.) JPI Trading in support of its motion to vacate submitted copies of bills of lading for shipments from China to the United States at issue in this action. (Safdieh's Apr. 21, 2005 Decl. Ex. 9.) These bills of lading list "Air-City (China) Co., Inc." in the top of the bills, "Air-City Inc." as the "Forwarding Agent" and JPI Trading as the "Consignee" and "Notify Party." (<u>Id.</u>) I find that the bills of lading show that Air-City was a carrier and JPI Trading was the buyer. Moreover, JPI Trading indoes not deny that it entered into a contract with Jefftex to purchase goods that were to be shipped by sea, and that this contract is the subject of this lawsuit. (<u>See</u> Safdieh's Apr. 21, 2005 Decl. ¶¶ 4-16

(sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).)  Thus, the evidence submitted by JPI

Trading supports the court's finding that the contract at issue is by its nature maritime and

confers admiralty jurisdiction on the court.

JPI Trading next argues that because the actual shipping agent was Air-City (China) Co.,

Ltd., that the Second Circuit's decision in Leather's Best, Inc. precludes maritime jurisdiction.

451 F.2d 800 (2d Cir. 1971).  In Leather's Best, Inc., a seller sued a shipper and a port for breach

of contract because the goods held by the port were stolen before they could be delivered to the

buyer.  Id. at 806-07.  The Second Circuit's found that because the port was not a carrier listed in

the bill of lading, and merely performed "the function of caring for the cargo until delivery," that

the court did not have admiralty jurisdiction over the seller's claims against the port.  Id. at 808.

Unlike the port in Leather's Best, Inc., Air-City was not a mere bailee.  Air-City was a

carrier listed in the bills of lading, much like the shipper over which the court had jurisdiction in

Leather's Best, Inc.  Id. at 807.  Air-City, Inc., which contracted with Jefftex (as evidenced in the

bills of lading) through its China office Air-City (China) Co. to ship goods to JPI Trading, was

clearly "involved in the carriage of goods at issue."  RMS Int'l Shipping GmbH v. Stemcor USA,

Inc., No. 90-CV-4918, 1991 U.S. Dist. LEXIS 9852, at *14 (S.D.N.Y. July 18, 1991).  Therefore,

I find that this court has admiralty jurisdiction over Jefftex's claims against Air-City, Inc.[3]

(2)    Federal Question

Jurisdiction is also based on the existence of a federal question, whether Air-City is liable

for shipments delivered in violation of Carriage of Goods by Sea Act, 46 U.S.C. §1300 et seq.

---

[3]As this court has admiralty jurisdiction, Rule 14(c) allows Jefftex to proceed against
Third-Party Defendant JPI Trading "as if the plaintiff had commenced it against the third-party
defendant as well as the third-party plaintiff."  Fed. R. Civ. P. 14(c).

("COGSA"). Pursuant to COGSA, all "carriers" may be liable for lost or damaged cargo.

Duferco Steel Co. v. M/V Festivity, No. 97-CV-7898, 1998 U.S. Dist. LEXIS 12462, at *2-3

(S.D.N.Y. Aug. 13, 1998). COGSA defines as a "carrier" "the owner or charterer who enters

into a contract of carriage with a shipper." COGSA, § 1301(a). Courts generally find that "all

owners or charterers involved in the carriage of goods at issue [are] COGSA carriers who are

potentially liable to cargo interests under the bill of lading." RMS Int'l Shipping GmbH v.

Stemcor USA, Inc., No. 90-CV-4918, 1991 U.S. Dist. LEXIS 9852, at *4 (S.D.N.Y. July 18,

1991) (quoting Joo Seng Hong Co., Ltd. v. S.S. Unibulkfir, 483 F. Supp. 43, 46-47 (S.D.N.Y.

1979)). I find that Air-City was a listed carrier in the bills of lading governing this contract

dispute. Accordingly, Air-City was a "carrier" which may be sued under COGSA for failure to

properly deliver goods shipped by Jefftex to JPI Trading.

(3)     Diversity Jurisdiction

There is also diversity jurisdiction in this matter. In order to satisfy diversity jurisdiction

requirements, plaintiff Jefftex must be a citizen of a different state than Air-City, Inc. and JPI

Trading, and the amount sought by Jefftex must exceed $75,000.00. See 28 U.S.C. § 1332(a).

Jefftex is a citizen of Taiwan, and Air-City, Inc. and JPI Trading are New York corporations.[4]

Jefftex sought (and received) a judgment for well over $75,000.00. (See Compl. ¶¶ 38, 42, 46,

50, 54, 60, 65; Apr. 15, 2005 J.). Therefore, this court has diversity jurisdiction over this matter.

This court has subject matter jurisdiction over this matter under maritime law, because of

_____

[4]JPI Trading's contention that Jefftex is doing business in New York, see infra Section II(A)(3)(b), would not disturb the diversity of the parties, because Section 1332(a) is based on citizenship and JPI Trading does not dispute that Jefftex is a foreign citizen. See Young Aff. ¶ 4; 28 U.S.C. § 1332(a).

the existence of a federal question, and because of the diversity of the parties. As a result, the judgment is not void.

3.      Excusable Neglect

Under Rule 60(b)(4), a court may vacate a default judgment if the movant demonstrates "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1); American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996). A court weighing whether the defendant's default constitutes "excusable neglect" is guided by three principal factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004) (quoting S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)). Of the three criteria to be analyzed, willfulness is preeminent, and "courts should not set aside a default when it is found to be willful . . . ." Brein v. Kullman Indus., Inc. 71 F.3d 1073, 1077, 1078 (2d Cir. 1995) (citations and internal quotation marks omitted); see also Westmark Dev. Corp. v. Century Sur. Co., 199 F.D.R. 491, 495-96 (2d Cir. 1995) (reasoning that "a willful default will normally not be set aside"); United Bank of Kuwait, PLC v. Enventure Energy Enhanced Oil Recovery Associates - Charco Redondo Butane, 755 F. Supp. 1195, 1205 (S.D.N.Y. 1989).

a.      Willfulness of Default

This court can properly deny a motion to vacate a default judgment if the movant's conduct resulting in the default, even not in "bad faith," amounts to "more than mere negligence." Gucci Am., Inc. v. Gold Center Jewelry, 158 F.3d 631, 634-35 (2d Cir. 1998), cert.

denied sub nom. Home Boy 2000 v. Gucci Am., Inc., 525 U.S. 1106, 119 S. Ct. 873, 142 L. Ed. 2d 774 (1999). A "defendant's choice to default for strategic reasons or in order to gain some tactical advantage weighs strongly in favor of entering default judgment." Bank of New York v. Meridien Biao Bank Tanzania Ltd., No. 95-CV-4856, 1998 U.S. Dist. LEXIS 11288, at *7 (S.D.N.Y. July 22, 1998) (citing American Alliance, 92 F.3d at 57).

JPI Trading between May and December, 2004 engaged in conduct offensive to this court and the other litigants. JPI Trading appeared without explanation two hours late to its May 25, 2004 settlement conference, and failed to attend settlement conferences on July 23, 2004, August 23, 2004, and November 30, 2004, in spite of court orders that directed it to appear. Further, JPI Trading did not hire new counsel after it terminated Mr. Mancinelli on July 14, 2004, which in effect announced that JPI Trading would not in the future (because it could not) appear before this court. See Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993) ("[A] corporation may appear in federal courts only through licensed counsel.") (citations omitted). JPI Trading had ample notice that its actions, if continued, would result in a default judgment. Judge Levy warned JPI Trading in his October 21, 2004 Order that "if this case does not settle, and Mr. Mancinelli's motion to withdraw as counsel is granted, JPI [Trading] will be in default unless new counsel files a notice of appearance forthwith." (Oct. 21, 2004 Order.) Judge Levy further cautioned JPI Trading that failure without good cause to appear with counsel by November 30, 2004 "will likely result in the entry of a default judgment against JPI [Trading]." (R&R.) Despite these warnings, JPI Trading failed to contact the court with new counsel until April 1, 2005.

JPI Trading, through its present counsel, admits that Safdieh's conduct was inappropriate,

but explains that it was a result of Safdieh's "belief [that] he could, somehow, better resolve the matter between the parties without involvement of counsel." (JPI Trading's Mem. Supp. Mot. Vacate, at 2.) However, this assertion is belied by Safdieh's representation to the court on October 21, 2004 that JPI Trading "agreed to submit [a] settlement agreement to his new attorney on Monday October 25, 2004 and to submit an executed agreement to plaintiff by October 27, 2004," (R&R, at 3) and his subsequent failure to communicate with the court or to obtain new counsel until April 1, 2005. It defies credibility that a party that honestly believed that it could better resolve a conflict without counsel would engage in months of court mediation with counsel, and then represent to the court that it would obtain new counsel to consummate a settlement agreement.

Rather than excusing its default, these circumstances demonstrate the deliberateness of JPI Trading's conduct. If, as JPI Trading suggests, it had no intention of obtaining counsel, its misrepresentations to the court that it would obtain counsel amounted to a transparent attempt to prolong settlement discussions. Under the circumstances, and the many opportunities granted by the court to JPI Trading to settle this action and/or obtain new counsel, I find that JPI Trading's unjustified failure to appear at settlement conferences and to obtain counsel despite numerous clear and unambiguous court orders that resulted in its default was willful and deliberate.

b.      Meritorious Defense

JPI Trading has also failed to demonstrate that it has a meritorious defense. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993).

In support of its motion to vacate, JPI Trading advances four defenses, first that New York State's door-closing statute precludes plaintiff Jefftex from maintaining an action in a court in New York, and three defenses relating to the contract claims.

(1)     New York Business Corporation Law Section 1312

JPI Trading argues that New York's door-closing statute, New York Business Corporation Law, Section 1312, precludes plaintiff Jefftex from maintaining an action in a court in New York State.  (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8).  Section 1312 states that "[a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state . . . ."  New York Business Corporation Law, § 1312(a).

Section 1312 does not apply to plaintiffs in Federal courts that have original or federal question jurisdiction, because a state cannot prescribe plaintiffs who are "entitled under the Constitution and laws of the United States to resort to the Federal courts for the enforcement of a valid contract."  David Lupton's Sons Co. v. Automobile Club of America, 225 U.S. 489, 500, 32 S. Ct. 711, 714, 56 L.Ed 1177, 1181-82 (1912); see also Johnson v. New York Breweries Co., 178 F. 513, 514 (2d Cir. 1910); Wing v. McCallum, 16 F.2d 645, 647 (D. Mass. 1926); Richmond Cedar Works v. Buckner, 181 F. 424, 426 (S.D.N.Y. 1910); Groton Bridge & Mfg. Co. v. American Bridge Co., 151 F. 871, 874 (N.D.N.Y. 1907).

However, Section 1312 may apply to plaintiffs who seek to maintain a diversity action in Federal courts to enforce contracts that are wholly intrastate in nature.  Williams Erectors of Suffolk County v. Mulach Steel Corp., 684 F. Supp. 357, 358 (E.D.N.Y. 1988) (citing Netherlands Shipmortgage, Corp., Ltd. v. Madias, 717 F.2d 731, 735 (2d Cir. 1985)).  Cf. Grand

14

Bahama Petroleum Co. v. Asiatic Petroleum Corp., 550 F.2d 1320, 1326 (2d Cir. 1977) (New York's door closing statute would violate the Commerce Clause if it were to prevent enforcement of contracts involving interstate commerce.).  Because subject matter jurisdiction is based in part on the diversity of the parties, I will proceed with an analysis of the applicability of Section 1312 to the plaintiff.

To show a violation of Section 1312, the movant has the burden to show both that the plaintiff corporation is doing business in New York, and that the business is wholly intrastate. Fashion Fragrance & Cosmetics v. Croddick, No. 02-CV-6294, 2003 U.S. Dist. LEXIS 2220, at *20-22 (S.D.N.Y. Feb. 13, 2003); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d . 374, 385-86 (S.D.N.Y. 1998), aff'd, 173 F.2d 843 (2d Cir. 1999).  A corporation is "doing business" in New York if it engages in "systematic and regular" activities in New York.  Fine Arts Enterprises, N.V. v. Levy, 149 A.D.2d 795, 795-96, 539 N.Y.S.2d 827, 829 (3d Dep't 1989).  The "doing business" standard under Section 1312 is stricter than under New York's long-arm statute "[b]ecause of the possibility of an unconstitutional infringement of interstate commerce . . . ." Storwal Int'l, Inc. v. Thom Rock Realty Co., L.P., 784 F. Supp. 1141, 1144 (S.D.N.Y. 1992) (citing Madias, 717 F.2d at 736, Invacare Corp. v. John Nageldinger & Son, Inc., 576 F. Supp. 1542, 1544 (E.D.N.Y. 1984); International Fuel & Iron Corp. v. Donner Steel Co., 242 N.Y. 224, 231, 151 N.E. 214 (1926)).

Mere solicitations of sales and placement of orders is insufficient to show that it is "doing business" in the state.  Uribe v. Merchants Bank of New York, 266 A.D.2d 21, 22, 697 N.Y.S.2d 279, 280 (1st Dep't 1999); S&T Bank v. Spectrum Cabinet Sales, Inc., 247 A.D.2d 373, 668 N.Y.S.2d 641 (2d Dep't 1998); see also Fine Arts Enterprises, N.V., 149 A.D.2d at 795-96

(Evidence of a New York address, bank account, and execution of a contract in New York is insufficient proof to show that plaintiff is in violation of Section 1312.)

JPI Trading maintains that Jefftex's association with Mark Pan, its New York-based attorney, constitutes "doing business" in New York. (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8.) In support of its motion, JPI Trading submitted as an exhibit the first page of a letter by Mr. Pan to JPI Trading dated March 20, 2003 referring to a request by JPI Trading for release of invoices. (Safdieh's Apr. 21, 2005 Decl. ¶ 8 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 3, at 1.) However, this document by itself does not show that Mr. Pan conducts "systematic and regular" business on behalf of Jefftex in New York. Fine Arts Enterprises, N.V., 149 A.D.2d at 795-96. Moreover, even if Mr. Pan were Jefftex's business agent for New York, Section 1312 would not preclude Jefftex from maintaining an action in a court in New York, because the activities that JPI Trading alleges that Mr. Pan engaged in, the international shipping of goods, are not "wholly intrastate." Fashion Fragrance & Cosmetics, 2003 U.S. Dist. LEXIS 2220, at *20-22.

Lastly, JPI Trading has submitted evidence that Jefftex is currently registered as a corporation doing business in New York. (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 7-8; Carulli Aff. Ex. 13, at 2). However, a corporation doing business in New York does not run afoul of Section 1312 unless it lacks authorization to do business in New York or has failed to pay New York taxes or fees. Indeed, proof of registration as a corporation doing business in New York would suggest that Jefftex is compliant with New York laws. As a result, JPI Trading has failed to show that Jefftex is in violation of New York Business Corporation Law Section 1312.

(2)	Contract Claim Defenses

JPI Trading next contends that Jefftex's shipped apparel contained product defects that constitute a defense to its nonpayment. (JPI Trading's Mem. Supp. Mot. Vacate, at 6, 8-10; Safdieh's Apr. 21, 2005 Decl., ¶¶ 9, 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1)). JPI Trading in support of its motion submits documents that purport to be electronic correspondence from JPI Trading to Jefftex between January, 2002 and December, 2003. (Safdieh's Apr. 21, 2005 Decl., Ex. 5, 8.).

JPI Trading relies on the Exhibits of the Declaration of Joseph Safdieh, president of JPI Trading, as evidence of Jefftex's nonconforming goods. (Safdieh's Apr. 21, 2005 Decl. ¶ 9, 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).) On January 29, 2002, JPI Trading informed Jefftex that an apparel company rejected goods produced by Jefftex, and stated "We will not pay for goods we cannot sell." (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 3). On February 4 and March 10, 2003, JPI Trading informed Jefftex that it hung apparel "incorrectly," and advised that it should "correct this." (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 15-16.) On May 7, 2003, JPI Trading cited problems with samples provided by Jefftex. (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 11.) On June 2 and June 3, 2003, JPI Trading complained about the weight of the fabric of shipped apparel, and asked "What is going on? Anxiously awaiting you [sic] reply." (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 9-10.) On November 26, 2003, JPI Trading complained about shipping samples, and stated that it was "very disappointed." (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 4.) On December 22, 2003 JPI Trading complained of problems in one of Jefftex's shipment, and asked Jefftex, "Please tell me what we should do now?" (Safdieh's Apr. 21, 2005 Decl. Ex. 5, at 1).

From the outset, JPI Trading has not shown that the items complained of in its exhibits relate to the shipments at issue in this matter. Safdieh states in his Declaration that JPI Trading has a longstanding business relationship with Jefftex and that the correspondence attached as Exhibit Eight refers to goods "covered by other invoices and not in the 11 China Invoices." (Safdieh's Apr. 21, 2005 Decl. ¶ 12 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).) Accordingly, JPI Trading is unable to show which (if any) of the documents that it presents to the court are relevant to the question of whether any of Jefftex's shipments that are the subject of this lawsuit contained nonconforming goods.

Even accepting, arguendo, that the exhibits are correspondence that refer to the Jefftex shipments at issue, JPI Trading has not shown that it rejected any of the shipments. If a buyer fails to make an effective rejection of the goods within a reasonable time, the buyer is liable for the contract price of the goods. Miron v. Yonkers Raceway, Inc., 400 F.2d 112, 117-18 (2d. Cir. 1968); see Uniform Commercial Code § 2-206. These exhibits reflect an ongoing commercial relationship in which JPI Trading, the buyer, expressed concern and disappointment with some shipments by Jefftex, the seller. Nowhere in the exhibits is there an unequivocal rejection of the shipments that Jefftex made to JPI Trading that are the basis of this lawsuit. JPI Trading also does not include in its exhibits replies from Jefftex that might indicate whether Jefftex received this correspondence or understood JPI Trading's correspondence as a rejection of its goods.

In fact, the uncontested evidence is that JPI Trading has retained the Jefftex shipments. (Pan Aff. ¶¶ 14-15, Ex. R; Weinberg Aff. ¶¶ 40-41, Ex. R). Accordingly, JPI Trading's failure to notify Jefftex of its alleged breach after it retained Jefftex's goods bars JPI Trading from any

remedy.[5]  See Hyosung America, Inc. v. Sumagh Textile Co., Ltd., 137 F.3d 75, 80 (2d Cir.

1998); Sears, Roebuck & Co. v. Galloway, 195 A.D.2d 825, 825 (3rd Dep't 1993); Uniform

Commercial Code 2-607(3)(a).   Therefore, I find that JPI Trading has not shown that it has a

meritorious defense of nonconforming goods.

JPI Trading asserts two other defenses.  It claims that Jefftex did not provide "pre-

production samples" before shipping the apparel to JPI Shipping (JPI Trading's Mem. Supp.

Mot. Vacate, at 9-10; Safdieh's Apr. 21, 2005 Decl. ¶¶ 5, 10, 14-15 (sworn to in Safdieh's Aug.

26, 2005 Supp. Decl. ¶ 1)) and that JPI Trading asserts that Jefftex missed shipping deadlines.

(JPI Trading's Mem. Supp. Mot. Vacate, at 13-14, Safdieh's Apr. 21, 2005 Decl., ¶¶ 10-11, 13

(sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1).)  However, JPI Trading has failed to

provide this court with any evidence or to cite to any authority that Jefftex was contractually

obligated to submit pre-production samples or to meet any deadlines that JPI Trading alleges that

Jefftex missed.

As a result of the foregoing, JPI Trading has failed to present "highly convincing"

evidence of a meritorious defense.  United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977).

c.      Prejudice to Other Parties

Finally, a court weighing a motion to vacate a default judgment in accordance with Rule

60(b) must consider the prejudice caused to nondefaulting parties in granting the motion.

---

[5]JPI Trading points to other correspondence in which JPI Trading canceled or attempted
to cancel orders for Jefftex goods.  (See JPI Trading's Mem. Supp. Mot. Vacate, at 7-11,
Safdieh's Apr. 21, 2005 Decl. Ex. 10).  Again, it is unclear whether the correspondence refers to
the shipments that are the subject of this lawsuit.  It is also unclear whether the correspondence
was received by Jefftex, if Jefftex responded to this correspondence, or if JPI Trading ultimately
accepted these orders.  In light of these ambiguities, this court declines JPI Trading's invitation to
speculate as to the nature of this correspondence.

Typically, delay alone does not establish prejudice, unless it "result[s] in the loss of evidence, create[s] increased difficulties for discovery, or provide[s] a greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (quoting 10 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure:  Civil, § 2699 at 536-37 (1983)).  A risk of dissipation of assets can show prejudice.  Dixonweb Printing Co., 1995 U.S. Dist. LEXIS 8871, at *12-13.

JPI Trading argues that there would be no prejudice caused by vacatur of the judgment, because the lawsuit is at a very early stage, and no discovery has taken place.  (JPI Trading's Mem. Supp. Mot. Vacate, at 12-13.)  Jefftex contends that JPI Trading has dissipated its assets, and that continued litigation will afford JPI Trading the further opportunity to render any judgment against it futile.  (Jefftex's Mem. Opp'n Mot. Vacate, at 22.)  Specifically, Jefftex refers this court to a Declaration from Jefftex counsel who learned during an attempt to restrain JPI Trading's assets following my award of attorney's fees that JPI Trading is heavily indebted to local banks.  (Id., Lee Decl. ¶¶ 7-12.)  I conclude that Jefftex has shown a risk of dissipation of assets and that it will suffer prejudice from the vacatur of the judgment.  Thus, the factor of prejudice favors Jefftex.

In conclusion, I find that JPI Trading's egregious conduct in failing on numerous occasions to attend mandatory appearances and to hire counsel as commanded by court orders was willful and deliberate, that JPI Trading has failed to assert a meritorious defense, and that there would be prejudice to the nondefaulting parties if this default judgment were vacated.  Therefore, JPI Trading's motion to vacate the judgment is denied.

B.      Motion to Amend the Answer and Modify the Judgment

JPI Shipping additionally seeks leave from this court to add counterclaims for "defects and/or lateness . . . to the complete loss of all business from certain customers, the loss of prospective economic advantage and the damage to JPI's business reputation."  (JPI Trading's Reply Mem. Supp. Mot. Vacate, at 10.)  A motion to amend a non-responsive pleading after 20 days after it is served should be granted "by leave of court . . . if justice so requires."  Fed. R. Civ. P. 15(a).  Amendments should not be allowed if "the amendment is futile."  Neshewat v. Salem, 365 F. Supp. 2d 508, 515 (2d Cir. 2005) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).  An amendment is considered futile if it fails to state a claim or would be subject to a motion to dismiss.  Id.

JPI Trading's motion to amend cannot succeed, because I have denied its motion to vacate the default judgment.  As the default stands, JPI Trading "has no further standing to contest the factual allegations of plaintiff's claim for relief."  Carribean Produce Exchange v. Caribe Hydro-Trailer, Inc., 65 F.R.D. 46, 48 (D.P.R. 1974) (citing Thomson v. Wooster, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)).  See also Taylor v. Ballwin, 859 F.2d 1330, n.7 (8th Cir. 1988).

In addition, as discussed supra, I find that the defenses asserted by JPI Trading, and upon which its proposed counterclaims are based, lack merit.  Accordingly, its proposed counterclaims fail for futility.  Therefore, JPI Trading's motion to amend to add counterclaims is denied.

C.      Cross Motions to Modify Default Judgment

After I found JPI Trading in default, on April 15, 2005 I entered a judgment for Plaintiff Jefftex and against Third-Party Defendant JPI Trading in the amount of $1,126,957.80 plus

interest.  (Apr. 15, 2005 J.)  Jefftex and JPI Trading now move to modify the judgment.  A court

considers a motion to modify the judgment under the same Rule 60(b) "exceptional

circumstances" standard as a motion to vacate the judgment.  See Christian v. 9A Newfound Bay,

277 F. Supp. 2d 610, 618 (D.V.I. 2003) (citing Moolenaar v. Government of the Virgin Islands,

822 F.2d 1342, 1346 (3d Cir. 1987)).

As stated supra, Jefftex's claims against Air-City and JPI Trading involve unpaid

shipments from China, Vietnam, Cambodia, and Taiwan.  The amount of the default judgment

was based on Jefftex's counsel's affidavit, which stated that "[o]nly the China shipments

remained unpaid," and listed the amounts of all China shipment invoices, which total

$1,126,957.80.  (Weinberg Apr. 8, 2005 Aff. ¶¶ 7-8.)  Third Party Defendant JPI Trading

contends that it partially paid for the shipments, and moves that the judgment should be modified

to $1,005,174.30.  (JPI Trading's Mem. Supp. Mot. Vacate, at 14-15;  Safdieh's Apr. 21, 2005

Decl. ¶ 7 (sworn to in Safdieh's Aug. 26, 2005 Supp. Decl. ¶ 1), Ex. 2).  Jefftex responds that the

judgment already has been reduced to account for JPI Trading's partial payment, as reflected in

its April 29, 2005 Notice of Partial Satisfaction of Judgment, and further moves for an additional

judgment of $1,146,232.10 against JPI Trading for defaulting on settlement agreement

obligations.  (Jefftex Mem. Supp. Default J., at 3-4.)

JPI Trading in support of its motion attached two cashier checks in the amount of two of

the 11 China shipments (Safdieh's Apr. 21, 2005 Decl. Ex. 2) and states that it paid an additional

$17,561.00 against two other China shipments.  (Safdieh's Apr. 21, 2005 Decl. ¶ 8.)  Jefftex does

not deny these payments, but rather states that the reduction is reflected in Jefftex's Partial

Satisfaction of Judgment, which reduced the judgment to the amount to which JPI Trading seeks

to modify. (Notice Partial Satisfaction J.; Weinberg's Supp. Aff. ¶ 29, Ex. P). As JPI Trading has offered no evidence that the amount of the judgment should be further reduced, I find that JPI Trading's motion to modify the judgment fails because the judgment has already been so modified.

Nor has Jefftex persuaded me that I should modify the default judgment to include the amount of the Cambodia, Taiwan, and Vietnam shipments. While Jefftex argues that JPI Trading "defaulted in performing its obligations under the global settlement agreement . . . ." (Jefftex Memo. Supp. Default J., at 8) it has not provided this court with any evidence of JPI Trading's obligations under the "global settlement agreement," or how it failed to meet these obligations. For its part, JPI Trading states that it "settled directly with Jefftex all of the claims respecting non-China shipments (i.e., those from Taiwan, Cambodia and Taiwan)." (Safdieh's Supplemental Decl. ¶ 2.) In light of the fact that I relied on Jefftex's own statement that "[o]nly the China shipments remained unpaid," (Weinberg Apr. 8, 2005 Aff. ¶ 7) in finding JPI Trading in default the contract price of the China shipments, Jefftex has not provided sufficient evidence for this court to find JPI Trading in additional default of $1,126,957.80. Insofar as Jefftex's motion to modify the judgment is urged as an additional sanction against JPI Trading for "failure to plead any meritorious claim and failure to present any legitimate bases in their amended motion to vacate the default," this court shall treat its application as one for sanctions. (Jefftex Memo. Supp. Default J., at 3-4.)

Accordingly, JPI Trading's and Jefftex's motions to modify the judgment are denied.

D.     Motions for Sanctions and Attorney's Fees

Lastly, Jefftex and Air-City move for this court to sanction JPI Trading under Fed. R.

Civ. P. 11 for "material misstatements and omissions of fact and law made by and on behalf of" JPI Trading in bringing these motions. (Jefftex's Memo. Supp. Default J., at 8.) Rule 11 requires of litigants that "the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension," Fed. R. Civ. P. 11(b)(2), and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b)(3). The imposition of sanctions under Rule 11 should "resolve all doubts in favor of the signer." Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 504 (2d Cir. 1989). Pursuant to the Rule, a party or an attorney has an affirmative duty to make "reasonable inquiry into the facts and the law." Bus. Guides, Inc. v. Chromatic Commun. Enters., 498 U.S. 533, 542-43, 111 S. Ct. 922, 929, 112 L. Ed. 2d 1140 (1991) (citations omitted). The imposition of sanctions against attorneys is discretionary and may be warranted "where an attorney's conduct degrades the legal profession and disserves justice." MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996).

In support of this motion, Jefftex argues that sanctions are appropriate because JPI Trading (a) misstated the correct standard of review of a default judgment; (b) did not cite to statutory authority or decisional law in support of its contention that the court does not have admiralty jurisdiction over this matter, and that New York's door closing statute precludes Jefftex from suing in this court; (c) asserted a frivolous defense of nonconforming goods, as it did not allege that it rejected the seller's goods; and (d) had no support for its claim that Mark Pan is a business agent for Jefftex. (Jefftex's Memo. Supp. Default J., at 4-8).

An "argument constitutes a frivolous legal position . . . if, under an objective standard of

24

reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." Caisse Nationale de Credit Agricole-CNCA v. Valcorp., Inc., 28 F.3d 259, 264 (2d Cir. 1994) (internal quotations omitted). I find that JPI Trading's legal arguments do not amount to a "frivolous legal position." Id. While JPI Trading failed to recite all relevant factors for Rule 60(b) review of default judgments, its legal arguments in favor of vacatur fit within the guidelines set forth in Rule 60(b). JPI Trading's discussion of admiralty jurisdiction and New York's door-closing statute was supported by authority and did not contradict established law. Moreover, JPI Trading's substantive defense of nonconforming goods did not lack an allegation that it rejected Jefftex's goods; rather, its argument that its expressions of disappointment constituted a rejection was unpersuasive. Significantly, although JPI Trading sparingly cited to authority in its briefs in support of its motions, no authority was offered in such a way as to suggest that it was attempting to mislead the court. In conclusion, while I rejected JPI Trading's legal arguments, I find that they were reasonable enough to survive Rule 11 scrutiny.

Nor has JPI Trading made a factual "allegation [that] is utterly lacking in support," O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996), that would compel this court to sanction it. I find that there is support in the record that Mr. Pan, in his role as counsel, was involved in transactions between Jefftex and JPI Trading apart from this litigation. Although JPI Trading may have been incorrect in its characterization of Mr. Pan as a "business agent," I do not find that this characterization is utterly lacking in support.

In conclusion, I find that the legal argument and factual allegations in JPI Trading's motions to vacate and/or modify the judgment, and to amend, do not rise to Rule 11 sanctionable

conduct.  Accordingly, Jefftex's and Air-City's motions for sanctions and attorney's fees are denied.

IV.    Conclusion

JPI Trading's motions to vacate or modify the judgment, and to amend its Answer are DENIED.  Jefftex's motion to modify the judgment is DENIED.  Jefftex's and JPI Trading's motions for sanctions and attorney's fees are DENIED.

SO ORDERED.

Dated:  October 17, 2005       _\_/s/ Nicholas G. Garaufis\_\_\_\__
       Brooklyn, N.Y.       Nicholas G. Garaufis
          United States District Judge